Good morning, Your Honors. My name is Aaron Lawson. I represent the appellant, Chad Eichenberger. With the Court's permission, I'm going to attempt to reserve about three minutes of my time for rebuttal. ESPN discloses to a third party, Adobe Analytics, information that to Adobe identifies particular individuals like Chad Eichenberger and the videos that they watch on ESPN's WatchESPNroad.com. You said it discloses information that to Adobe identifies? Yes. Can you explain that? Because that's the nub of it. Right. So the statute, the statutory definition of personally identifiable information is information which identifies an individual. And as I see it, that invites a pretty critical question, which is it identifies to whom? And our contention is that it identifies to the specific recipient. That's the correct way of thinking about when information is personally identifiable. So because Adobe can stitch it together, either with those two data points or because it can stitch it together with other stuff, it's collected and identify your clients? Yes. It has information. It comes to the communication with information that enables it to interpret it in a way that identifies the particular subjects of this disclosure. I'm sorry. Go ahead. Forgive me. Do you concede that just from the two data points that ESPN had, the Roku serial number and the list of movies, those two components can't be put together to identify your client? Yes. It takes more? That is correct. It takes more. You can't have just the serial number. Okay. My question has to do with what happened to this information. As I understand the allegations, the information was sent to an analytics company that did some stuff with data on an aggregated basis and gave it back to ESPN. Is that correct? I think that's one of the things that could be happening here. I do think that Adobe eventually aggregated it. That's how I understood the allegation. Is that what the allegation is, that they analyzed the information and gave it back to ESPN? Well, so when you say aggregated, you mean ESPN? Can you just answer the question? Did the third party gave the information back to ESPN in another form? Yes. Okay. And I didn't see any allegation that they gave it to anyone else. Our understanding is, at least from what we know, they do not give it to anyone else. Okay. So here's where my question comes in ultimately, which is, had ESPN performed this analysis in-house, there'd be no claim because it is itself. And so my question is, is this really a third party in any meaningful sense? Or if they had a contractual obligation simply to return the information in a more sophisticated form, are they really just an agent or somehow part of ESPN for this particular purpose? Well, I think the statute tells us that in 2710b2d, the statute talks about disclosures made for the purposes of identifying back to the consumer. So I think Congress has already considered in some ways how we should think about this question. And even these disclosures, even though eventually the information is just coming back in all likelihood for the purposes of enhancing what kind of ads ESPN can give these people, that's still a disclosure that Congress says requires consent up front. What is? The outgoing disclosure as opposed to the- Yes, the outgoing disclosure. Right. So would your answer be the same if they simply hired off the street a contractor because they didn't have somebody in-house who had the skills to do this, but they had an independent contractor agreement with an individual to come and help them massage their data? Would your answer still be that that's an improper disclosure to a third person? I want to know the terms of the contract, of course. I think the answer is probably a little bit different. The trick is Adobe has all this information. And I think at the end of the day, it's not true that it's just sitting in Adobe servers and being moved back to ESPN. It matters that Adobe now has all of this new information. Then I have a question then about standing, too. The case from this court set up a two-part test. And I want you to assume for the purpose of this question that the first part is easily met. It's basically the same sort of statute that we were dealing with. Anyway, speaking only for myself, what about the second half? What potential actual real-world harm is alleged in the complaint here that is similar to, in kind, the sorts of things that were alleged in Robbins' loss of job opportunities, which is about as concrete as you can get? So what's concrete here? Well, I think what mattered in Robbins' is that the types of harm infringed on the interest directly that Congress had identified and protected against through the SCRA. And here the interest... Which are privacy interests also and accuracy interests. And here I think we have a very simple, straightforward interest in the privacy of this type of information. So where does that take you? We can ignore the second half of Robbins? The disclosure is what infringes on that interest. And it's at that point that you have the kind of injury that this court in Robbins and in Van Patten was looking for. How is that consistent with what the Supreme Court talked about when they reversed and remanded in that case, where they said it has to be real-world concrete? I disagree that the Supreme Court and in this court on remand requires a real-world harm. I think, in fact, that Robbins' opinion on remand rejects that argument. Well, there has to be an allegation of something happening beyond just a hypothetical. We've acknowledged, the common laws acknowledged, invasion of the right to privacy for a really long time. And it may be nominal damages, but it's not that there's a cause of action there. It seems to me there's another distinction in Spokio, which is not only that it was a procedural violation, but it was a statutorily created right. This creature was a creature of statute designed to make sure that people had fair credit reporting or an opportunity to raise their hand and say, hey, you messed up my credit report. Please fix it before you disseminate it, because if you disseminate the wrong thing, then I can't get my job, right? And it seems to me that it's just from the get-go qualitatively different than protecting the right to privacy. That's a creature of the common law. Well, I would agree, of course. Well, is it, though? I think Judge Graber is raising a very, you know, we requested additional briefing. We clearly are interested in this issue, so take your best shot. So I agree that this is also, of course, a statutorily created right. But what Congress is doing is ‑‑ But not the right to privacy isn't a statutorily created right. Right, right. So they've taken this preexisting common law right to privacy and said, so far it doesn't look like this right has been recognized to protect this kind of information. And you see in the legislative history that Congress is identifying a number of different reasons why we might want to protect this information. We've, of course, identified some, the information being added to these information pools and being used in ways that we can't really foresee. ESPN has identified some. This is the embarrassment point that they bring up as well. At the end of the day, though, Congress didn't codify one to the exclusion of any of the others. It just said, this information is clearly worth protecting, and it's worth protecting in much the same way that the common law has decided to protect other information. But it's the invasion when it comes back, right? I watch an ESPN tennis match and then pretty soon I'm getting bombarded by ads for tennis balls, tennis rackets, tennis stuff. So somebody out there has figured out that I like tennis, right? And that is sort of the issue. It seems to me that it's analogous to our Van Patten case. Isn't it like the Telephone Consumer Protection Act? What's the harm of really getting a robocall? Well, the harm is it bugs the heck out of us. It invades our privacy, and so Congress has legislated accordingly. But it's qualitatively different than a credit report, it seems to me. Yes, and I think that Van Patten is the best analog here, because this is, again, another instance in which Congress has said, well, it looks like the common law is not doing a good enough job of protecting a privacy interest that we think is particularly important. And it said, so what we're going to do is just prohibit this behavior that we think invades that particular privacy interest. And then when a defendant is alleged to have invaded, done whatever it is that Congress deems to be invasive, that is a concrete injury both at common law and then I think even after the recent Spokio decision. Assuming there is standing, it seems two courts have weighed in, two circuits have weighed in since the district court made its determination in our case. And so I'd just like for you to explain or present your argument here today as to why we should go with the First Circuit in your shaft and their definition of personally identifiable information or the Third Circuit, which took, I think, a little different approach. Yes, so this gets back to one of my answers earlier, the question that the statute invites is identifies to whom. And this is why we think the Third and First Circuits are in at least some tension, because the First Circuit says we want to, we're looking at whether the specific recipient can identify the subject of the disclosure from the disclosure. And the Third Circuit says we're more concerned with whether an ordinary person can identify the subject of the disclosure from the information. And it seems to me that the privacy interests that Congress has chosen to protect are better protected by the First Circuit's approach, because it shouldn't matter how the disclosure is made. If at the end of the day identifying information is transmitted, that should be, that is what Congress was trying to prevent. So the First Circuit's approach, I think, takes a more common sense approach as well, because we all come to any communication with sort of background understandings. No communication takes place in a vacuum. And so it makes sense to take account of the context in which these disclosures are being made. And the context here, as we allege, is that Adobe is in possession of a wealth of information that allows it to figure out who is being, who the subject of a given disclosure is and what videos they've watched. This, again, also I'd point to the common law as well. We talk about the defamatory towards quite a bit. What's the plaintiff's relationship here? Because the other issue that comes to mind is consumer and whether or not he was a subscriber. And why isn't this case like the Cartoon Network case out of the Eleventh Circuit? So I would offer as a definition of subscriber here an act that intentionally arranges for access to particular content with the given content provider. This is, I think, really what was driving the Yershov opinion again as well. I think that the Ellis Court's instinct to sort of separate out transitory relationships, consumer relationships, is a good one, and that's why it's looking for a durable or an ongoing relationship. And doesn't there have to be a direct relationship as well? Yes. I think that is really what Ellis was trying to, I think, tease out. But it drew a line that I don't think. What in the complaint, as it now stands, alleges the facts underlying the contention that he's a consumer by being a subscriber? Right. So at the moment, all the complaint alleges is that he's downloaded the channel, he's taken the steps that are needed to download it. As we pointed out, of course, the legal standard sort of, the ground sort of shifted under our feet after judgment, and we would ask that if this court wishes the district court to apply a different standard on remand, that it remand, I should say. As we point out in our reply brief, this channel, this ESPN channel on Roku, you only have access to this content if it's something you already can get through your cable provider. So what this means is that people who seek out this channel and download it are probably already durable consumers of ESPN content. And that's all Ellis was looking for, and we don't think the line that there's much reason to draw a line between other types of durable relationships and this kind, especially when, you know, particularly people in my generation, this is how we subscribe to things. This is how we interact with companies. And for the Roku device, you do have to be a subscriber to your cable? I mean, you have to be a paying member of your cable network? Or ESPN. I think that's about to change, but at the moment, and certainly back when the complaint was filed, you did have to have a cable package that included ESPN. If there are no further questions, I'll reserve the balance of my time. You may do that. Good morning, Your Honors. May it please the Court. Daniel Collins, Munger, Tolson, Olson on behalf of ESPN. There is no standing in this case, as we've explained in the supplemental briefing, under the decisions of the Supreme Court in Spokio and this Court in the remand decision in the Robbins case. And the problem is exactly the second step of the Spokio-Robbins analysis, which is that you can never rely, the Supreme Court has made clear, on the bootstrap argument that the statutory violation, without any further analysis, is a concrete injury in fact. There must always be either an actual harm to an underlying concrete interest or a material risk of harm to such a concrete interest. And the first step is to identify the concrete interest and then assess what real-world harms could happen from this statutory violation. And is there a material risk of harm from here? And this arrangement, in which anonymized data is sent from ESPN's servers onto Adobe Analytics servers, which does analysis that it then makes available back to ESPN, does not present a material risk of any of the kinds of harms that you see described in the legislative history and that are epitomized by the Judge Bork paradigm of a newspaper publishing his 146... How do you distinguish Van Patten? Van Patten involves an actual harm in the sense of being annoyed by picking up a call. That is real annoyance. I pick up the phone, it's a telemarketer, I don't want the call. That is itself a concrete harm. And that's different than being bombarded by tennis ads? There isn't actually... I have to harken back to my example. There actually isn't an allegation here that that's what we do with the data. That's not in the complaint. The complaint does not say that we do this in order to then create individualized ads. So that's a different argument than what I was asking about to get back to Van Patten. You're now saying that the complaint is just infirm. If it alleged that, if it alleged that they're doing this so that they can then ship ads to me, would that be sufficient and analogous to Van Patten? I don't think it's the interests that are protected by this particular statute. This statute, which is focused on the transfer of the information because of the embarrassment, the adverse consequences, chilling effect. If we kept it in-house and did the same analysis and then used it for targeting ads, there'd be no violation and it's not... But you're 15 years, and Judge Graber is asking, and I'm trying to ask about the harm. And you suggested, and I asked you to, why isn't Van Patten analogous because it's just the robocall, which isn't really no world harm except that it's just annoying, right? And so I'm trying to figure out why that's different than shipping data out that shows what movies I watch, figuring out who I am, and then beaming ads back in. And I think your analysis, your response is really, well, they don't allege we did beam back in. And what I'm now asking you is, if they had alleged that, how would that be different than Van Patten? I still think there's a question at the first step of the Robbins analysis, whether that is, in fact, a concrete interest that is protected by this statute, because the statute is not really focused on whether or not you use the information you have about video-watching records in order to then tailor ads or to suggest things that a person might be interested in. It's like the difference between defamation and yelling directly at the person that you are defaming, essentially. There's no third-party involvement is what you're ending up saying. If the only result is to send information back to you. But except that, I think that cuts against you, as does the embarrassment argument. Because legislative history is really clear here that Judge Bork didn't even watch embarrassing movies. He had really boring movies in his family. He made jokes about that. It's just a boring list of old movies. And so it wasn't embarrassing in any sort of a salacious way. Congress was just outraged that somebody looked at his family movie list and they thought that was a really outrageous invasion, right? But unless you get to the point that some natural person or some substantial number of natural persons actually realize, oh, so that's what Judge Bork watches, the harms don't occur. And there's no allegation that that ever occurs here with the. So they didn't beam out the tennis ads. They didn't say the person who lives at this address. Right. It just came back to me. That's what you're saying. It's just that it came in my hypothetical. The fact that the tennis ads then come back to me is what's different. That would be correct in your hypothetical, which, of course, isn't what's alleged in the case. Except what if I just feel creeped out about it, which I do, by the way, whenever I go shop for a dress on the Internet and then pretty soon I'm getting these, you know, funny, somebody out there knows that I'm shopping for a dress for a fancy occasion, right, and I just keep getting ads for it. What about that? Isn't that an invasion of privacy? Isn't that exactly what they were talking about? It's not what they're talking about in the legislative history of this particular statute. The statute is focused on the invasion of privacy that occurs when other people learn what you have rented from a particular video store. It's not concerned with the fact that the video store, which obviously knows what you want, has the ability to then suggest maybe what you're interested in. What about Senator Leahy's comments where he said pretty soon? It's kind of funny, actually, to read it. It's like a time capsule. He said pretty soon we'll get to the point where other people can see what we shop and where we go and this is really big brother. And what about those? I'm sure you're familiar with Senator Leahy's comments. But the statute isn't focused ultimately. There are those concerns that are expressed in the hearing transcript, but ultimately what does the statute do? The statute is only focused on disclosure of one item of information. It doesn't really say anything, apart from its destruction provision, about what you do in terms of gathering information as a video service provider. But let me also address the fact that there's a standing issue at all is because we're so far, in this case, afield from what the statute is really focused on. And I think that also shows up in the problems with personally identifiable information and with consumer. With respect to personally identifiable information, we submit that the Third Circuit got it right in the Nickelodeon case when it held that personally identifiable information means the kind of information that would readily permit an ordinary person to identify a specific individual's video watching behavior. And I think that this follows from looking at the text, the purpose, and the legislative history of the statute. We know from the statutory definition what the core of what the provision is aimed at, because it has a lengthy explanation with two elements in it as to what that core is. And that is that it's information that identifies a specific person and links them to specific video materials. Now, several courts have pointed out and plaintiff points out that it says includes in front of that. And so the question is, well, what's the significance of the relationship between the word includes and what follows it? And includes, and I think the Third Circuit correctly recognizes this, does not allow you to shear off the other elements of what's in there. You have a general term, personally identifiable information includes, and then a very detailed specific definition that has these two elements of identifying and of linking to specific video materials. Now, you have to construe the general category in light of those specific terms. And you can see that most clearly with respect to the second element. The second element, which is the linkage to specific video watching, has no textual hook if you just look at the words personally identifiable information themselves. And yet every court, no one has questioned that that's an irreducible and essential element of what this statute means by personally identifiable information. So you think Yershov was wrongly decided? First Circuit? And do you survive under the First Circuit approach? Well, the Third Circuit pointed out that Yershov, if you look at it on its facts, actually fits its test because we've reached the point where GPS information is so readily available, you can just type in the coordinates and you've got Judge Bork's home address. You know who it is. And so it said that on the facts, it would meet the Third Circuit's test. The First Circuit, after ---- On these facts, do you survive under the First Circuit? Well, the First Circuit's holding is actually narrower than what the test actually says because the court goes on and it has a fair amount of broader language. But then when it gets on page 489, it says our actual holding in the end need not be quite as broad as our reasoning suggests. And then it ties it much more specifically to the facts. I would submit that the First Circuit test, if the test of the First Circuit is construed in line with the broader languages, meaning any disclosure of information where I have reason to believe that the recipient is going to be able to, because of other information from a third party, link it back and thereby create the identification of the person linked with specific video-watching materials, that that is too broad. It changes the statute from one that's focused on disclosure, a statute that does not even apply to recipients, as held with respect to Google and the Third Circuit case. And now the whole scope of the statute is a question about recipient's capabilities. Does that mean the answer to Judge Murguia's question is no? She asked whether you survived under the test. If you read the First Circuit's test as broadly as the dicta suggests, then... What about under the holding, where they do limit their holding? What about that? Well, we've alleged, we've argued in a fourth section of our brief that they've not actually pleaded under Iqbal's sufficient facts to allege that there's personally identifiable information. So we would submit that even if you applied the First Circuit test, there's still finally the pleading issue, that they don't say enough about the mechanism, because even the First... So you would survive because of the infirm pleading, you think? We would survive because of the infirm pleading, because even the First Circuit recognizes that at some point, if the recipient has to do too much work with it, then it's not going to be personally identifiable information. And the problem is the complaint doesn't say how the linkage occurs. They admit in the reply brief they don't have the Roku cheat sheet. They don't know which Roku IDs. They don't have the database that links those up directly. They vaguely describe some sort of process by which Adobe links it up. They claim that that's supported by two documents that we explained don't actually support it up. The how matters a lot under both the First and the Third Circuit test. How exactly do you figure this out? So let's say it was a Social Security number instead of the Roku serial number. If somebody didn't have the how to link the Social Security number to an individual, you think that's not a big deal then? First, I would point out... And I say not a big deal. I don't mean to be flippant, but that it doesn't survive the review. No, and it may be a big deal under other statutes which regulate the use of Social Security number or it could be a privacy tort. But the question is, does it violate this statute? Under the Third Circuit's test, that's a much closer question as to whether or not Social Security numbers are sufficiently readily available that just from the point of view of the discloser releasing the information and not really making the test about what are recipients' capabilities. That may be a closer question. I think it's one of the harder questions because Social Security numbers, LinkedIn names, are not widely available on the Internet. To some hearers, they might be, and if you know that, that's the question that's reserved, I think. And do you think if it's a Social Security number or type and it's given to this analytics company and just given back to that, your company, then it's no big deal? Well, here it's anonymized Roku IDs. It's given to them. They perform statistical analysis to see what shows are popular among viewers, and that's made available back on an anonymized basis to ESPN. It doesn't trigger any of the concerns of the statute. But they have the ability, this analytics company, Adobe, has the ability to figure out information about the Roku serial number user along with the video history of that user and package that information and give it back to ESPN. Is that what's happening here? They claim through a process that they don't really specify that the linkage can be made. They don't say that that's what we have, in fact, retained them for. They say that that's something that— But, counsel, that part of your argument seems to me to be really fraught because the plaintiffs allege that they don't need to know how Adobe is doing this. After all, it's a data analytics firm, and their allegation is that Adobe markets itself as having this ability to stitch together. So why do they have to know how the mice work in the factory if they say this is what— They hold themselves out to perform this very function. Because if we're going to shift— And you're giving my data to that firm that does that. If we're going to shift the focus of the statute from what it is, which is a focus on disclosures by video service providers, and we're instead going to convert it into a statute that's focused on the capabilities of recipients who are not even really government. I don't think that's right. Their allegation is that you're giving these two data points, which together don't— He's admitted that. They're not personally identifiable information, but they're transferring them to a data analytics firm that holds itself out as having exactly this capability. Why would they need to know how it's done? Two points. First, I would point out they don't, in fact, adequately plead that it has that capability. They cite a document, and, in fact, the document doesn't support that it has that capability. And their prior First Amendment complaint we point out in the brief said that they didn't have the capability to do that. I read that part. Okay. But turning specifically to the statutory question, if you stray from the example which is given in the statute that the information identifies, the information does the identifying, if you stretch to that to what are the capabilities of the recipient, based on its ability to get information from third parties, then I think you're straying from the text, you're straying from the core purpose of the statute, and you're also introducing the likelihood of unintended consequences, which is one of the factors the Third Circuit said. Does this mean that all third-party use of cookies is now going to be deemed because of the capabilities of the recipient? Now to mean that you can't use that on websites that have video content on them? We have strayed very far, which is why the Third Circuit said, look, we should maybe have a little penumbra around information identified so that it's not just the information itself. If it's readily available, but not much further without guidance from Congress that it wants us to stretch this statute into these very different situations than we had before. I think, did I answer the Court's question? You answered it. Thank you. Thank you, counsel. All right. Thank you, Your Honor. Mr. Lawson, you have some rebuttal time remaining. Thank you, Your Honor. So Judge Bork famously said that lawyers live on the slippery slope of analogies, but shouldn't ski them to the bottom, and I think that's kind of what is happening in the Third Circuit's decision, especially when there are a number of ways in which we can sort of arrest this dissent. Consent. It's easy to get consent. You ask for it up front. A lot of consumers give it out of hand. I think one of the reasons that it's not asked for here is that many wouldn't, but it's still an easy step that you can do to link it. It may be not asked for because it's not a subscriber, but that's a different question. That's a fair point. That's a fair point. The other, I think, limiting principle here is that if you're giving this information to someone you know doesn't have the ability to link it, I don't think we have a violation at that point. We've discussed that in our briefs as something you might analyze under the. But what you're doing is taking a statute that gives some reasonably clear guidance to the party that's supposed to follow it. Don't give a list of videos attached to a name or an address or something. To something where the discloser now has an obligation to figure out what are all the capabilities of the person or entity to whom they're disclosing. It changes the calculus quite a bit about the nature of the statute, and is that really what Congress had in mind, to be the policer not only of your own disclosures, but essentially of the party to whom you're disclosing? I think it's something at least some Congress members did have in mind. This, I think, comes through quite clearly in Senator Leahy's remarks and in some of the other remarks that are in the committee testimony. But, again, I think that this kind of disclosure is made to a company that, ESPN is making these disclosures because they know Adobe can make these links. That's the whole point of these disclosures. And so I don't think that a lot of these hard questions are necessarily presented here. I think you could cabin liability, basically, if you know that they're going to make the link. If you're disclosing it in order to make the link, that is a knowing disclosure that violates 2710. I've run out of time if there are any further questions. If not, let's sit down. Probably none that we can get a resolution on instantly. Thank you very much. The case just argued is submitted, and the arguments from both of you were very helpful and interesting. We appreciate them.
judges: Graber, Murguia, Christen